Gabrielli, J.
(dissenting). More than three and one-half *663 years ago, Nancy Jean Tedeschi, a part-time, nonmatriculated student, was forced to withdraw from classes at Wagner College due to her disruptive and sometimes threatening conduct in and out of the classroom. Today, a majority of this court, after reviewing the extensive evidence that was offered at trial, has nevertheless directed that the college conduct a formal hearing, presumably for the purpose of determining the correctness and wisdom of its original decision. Since I am persuaded that such a hearing could be nothing more than a painful exercise in futility given the peculiar circumstances in this case, I am compelled to dissent.
Preliminarily, it must be noted that the Trial Judge in this case found the testimony of the school officials regarding Ms. Tedeschi’s disruptive and irrational behavior to be "extremely credible” (95 Misc 2d, at p 514). Also credited were the statements made by the school authorities concerning their unsuccessful efforts to resolve this delicate matter privately through informal conferences. Inasmuch as the Appellate Division affirmed without making new findings of fact, we must accept these findings as true for purposes of the present appeal (CPLR 5501, subd [b]; Cohen and Karger, Powers of the New York Court of Appeals, pp 476-480).
The statements of the school authorities, taken together, paint a portrait of a distraught, emotionally disturbed young woman who seemed incapable of controlling her own feelings of aggression and was equally incapable of fulfilling her responsibilities as a student in an institution of higher learning. Ms. Tedeschi habitually disrupted her Latin class throughout her first semester at the college and, indeed, failed to complete two of the three courses in which she was enrolled. The rapid deterioration of her emotional state culminated in a series of harassing telephone calls and suicide threats which, understandably, alarmed the authorities at the school. Under the circumstances, it cannot be said that the college officials reacted in an arbitrary or unfair manner. To the contrary, in attempting to bring Ms. Tedeschi and her mother in for an informal interview to discuss the student’s academic and emotional difficulties, the school officials obviously were hoping to reach a solution which would spare this unfortunate young woman further unnecessary embarrassment. That this is so is reflected in the college’s final letter to Ms. Tedeschi, which stated that she was being asked to withdraw from classes, but indicated that she was free to *664 apply for readmission if and when she straightened out her emotional difficulties. I cannot imagine a fairer resolution of the immediate problem, particularly in view of Ms. Tedeschi’s continued inability to discuss the concerns of the school officials in a calm and rational manner.
Yet, three and one-half years after the fact, a majority of this court concludes that the college is required to afford Ms. Tedeschi a hearing. What possible constructive purpose would be served by such a hearing we are not told. Ordinarily, a hearing serves the salutary purpose of permitting all sides to air their conflicting versions of events and bring forth all of the disputed facts. In the educational setting in particular, the United States Supreme Court has described the purpose of a disciplinary hearing as "an effort to inform [the student] of his dereliction and to let him tell his side of the story in order to make sure that an injustice is not done” (Goss v Lopez, 419 US 565, 580). Furthermore, "requiring [an] informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect” (id., at pp 583-584). In the case of Ms. Tedeschi, however, there was never any reason to believe that the student had an alternate version of the facts to present to a neutral hearing body. To the contrary, the evidence accepted by the trial court demonstrates that Ms. Tedeschi and her mother had repeatedly rebuffed efforts by the school authorities to elicit their side of the story. When Ms. Tedeschi finally did come in to speak with the academic dean and the other school officials, she was unable to provide a rational or coherent explanation for her conduct. Significantly, according to the testimony that was credited by the Trial Judge, Ms. Tedeschi never requested an opportunity to have her case heard by a neutral hearing body, although she did speak to school officials personally on at least two occasions.[1] Indeed, everything about the behavior of Ms. *665 Tedeschi and her parent indicated that they had no interest in presenting their case to college officials.[2]
It has been argued that the school had an affirmative obligation to notify Ms. Tedeschi of her right to a hearing before the Student-Faculty Hearing Board pursuant to the college’s regulations. Although the regulation relied upon by the majority states that the dean of students "may notify parents or guardians in order that they may have an opportunity to withdraw the student” when the student is "deemed to be an unfit member of the College”, however, there is nothing in the regulation that suggests that the school has an affirmative obligation to give the student formal notice of his right to a hearing prior to his suspension from classes. In any event, the special facts presented by Ms. Tedeschi’s case cannot be ignored. In view of her continued inability to conduct herself in a rational manner, it cannot be said that a hearing before a student-faculty board would have been an appropriate or effective safeguard of her interests. Inasmuch as the facts concerning her behavior were not seriously disputed, I cannot conclude that the school authorities acted unreasonably or unfairly because they did not think to invite Ms. Tedeschi to present her case to a hearing board.
Nevertheless, the majority, without definitively adopting any particular theory; now holds that the college was bound to follow its internal regulations and provide Ms. Tedeschi with a hearing even in the absence of a request for an opportunity to present her case. Presumably, it has done so in order to vindicate the general principle that once a university establishes and publishes a rule outlining the procedures to be followed in disciplinary matters, it must invariably adhere to that rule. There can be no disagreement with this concept as a general principle of law. In a case such as this, however, our application of such general principles must be tempered by our understanding of the somewhat unusual facts. Ms. Tedeschi was suffering from an emotional breakdown at the time in question. Her suspension from classes for the spring semester was not a "disciplinary” measure in the traditional sense, but rather was a recognition by the school officials that her continued attendance would be fruitless from an academic *666 standpoint: Given these facts, to require that the college adhere to its published procedures regarding student discipline would be to elevate formal legalistic principles over the dictates of ordinary common sense. I cannot concur with such a mechanistic approach to the law.
In the recent case of Matter of Olsson v Board of Higher Educ. (49 NY2d 408), this court stated that college officials must be accorded wide latitude in evaluating the academic progress of their students (cf. Board of Curators of Univ. of Mo. v Horowitz, 435 US 78). In an effort to overcome the rationale in Olsson as well as the college’s own rule permitting academic dismissals without a prior hearing, the majority asserts that the decision to dismiss Ms. Tedeschi was not rooted in academic concerns. The arguments advanced by the majority in connection with this assertion are not convincing. First, the majority erroneously states that the Appellate Division’s finding that the dismissal was based upon Ms. Tedeschi’s "irrational and disruptive conduct” somehow "tacitly overruled” the Trial Judge’s conclusion that the dismissal was grounded in academic reasons. Next, the majority reasons that, even if this is not the case, a hearing still should have been required because the school officials were motivated, at least in part, by reasons unrelated to Ms. Tedeschi’s academic failure. I find, however, that the majority’s attempts to parse out a distinction between dismissal for academic failure and dismissal for "other reasons” are, in this case, unavailing, since, in any event, Ms. Tedeschi was plainly suspended because of her inability to function in the academic setting. Given the student’s failure to make satisfactory progress in her studies as well as her repeatedly disruptive behavior in class, it cannot be said that the authorities at Wagner College were not acting in the proper exercise of their academic discretion when they made the decision to suspend Ms. Tedeschi without a prior hearing. Indeed, even the majority acknowledges that Ms. Tedeschi was terminated, at least in part, as a result of her academic performance. Accordingly, she was not entitled to a hearing under the regulations promulgated by the college.
In closing, I would note that the form of relief ordered by the majority serves only to highlight the problems inherent in its approach to this case. The majority has held that Wagner College must either reinstate Ms. Tedeschi or hold a belated formal inquiry into the facts surrounding her dismissal. I *667 cannot perceive, however, what possible purpose could be served by such a hearing at this point, particularly since three separate courts have already reviewed the facts underlying the dismissal. If Ms. Tedeschi has recovered from her emotional difficulties in the three and one-half years since she attended class at Wagner College, there presumably would be no obstacle to her applying for readmission. If, on the other hand, she has not yet managed to bring her problem under control, a ritualistic hearing regarding events long past will not advance her interests:
For all these reasons, I respectfully dissent and cast my vote in favor of affirming the decision of the Appellate Division.
Judges Jones, Wachtler and Fuchsberg concur with Judge Meyer; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Chief Judge Cooke and Judge Jasen concur.
Order reversed, with costs, and the case remitted to Supreme Court, Richmond County, with directions to enter judgment in accordance with the opinion herein.

. Ms. Tedeschi’s mother testified that she had telephoned the college and requested a hearing for her daughter. Later in her testimony, however, the student’s mother admitted: "I didn’t say hearing but I said I would like to come with Nancy and see what is happening in the school”. This belated request for a conference was made only after the school sent the final suspension letter to Ms. Tedeschi. Inasmuch as the mother had previously repulsed the efforts of school administrators to resolve the matter in a private interview, she must be deemed to have waived by her conduct any right she may have had to present arguments in opposition to her daughter’s suspension to the school authorities.

. The majority states that Ms. Tedeschi’s complaint in the instant action constituted a "sufficient demand” for a hearing. I fail to see, however, how a complaint served months after the dismissal can be regarded retroactively as a substitute for a timely notification to the college that Ms. Tedeschi wished to be heard.